UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HENRY W. HARTSHORN,

    Plaintiff,

v.                                           Case No. 17-C-98

MICHAEL L. SIEVERT, et al.,

    Defendants.

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Henry Hartshorn, who is currently serving a state prison sentence at Green Bay Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated by officers of the Marinette County Sheriff's Department in connection with the search of his home. Plaintiff alleges that Defendants forced him to give them the access code to his house, illegally entered his home, and then allowed access to a woman who, along with her boyfriend, caused extensive damage to and theft of his property. Currently before the court is Defendants' motion for summary judgment. For the following reasons, the motion will be granted and the case will be dismissed.

### BACKGROUND

Defendants assert that their proposed findings of fact must be deemed admitted because Plaintiff did not respond to them in accordance with Civil L.R. 56 (E.D. Wis.). Plaintiff did not respond to Defendants' proposed findings of fact and, while his unsigned brief lists 40 facts, he did not submit an affidavit or cite any evidence to support them. Accordingly, the court will deem

Defendants' proposed findings of fact admitted for the purposes of summary judgment. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting *pro se* litigants "must follow procedural rules of which they are aware, and district courts have discretion to enforce those rules against such litigants").

On September 19, 2014, Marinette County Sheriff's Office Sergeant Michael Sievert was dispatched to the Pembine High School regarding a report of child pornography located on a cell phone. Once he arrived at the school, Sievert met with Terresa Antonelli, who showed him a cell phone video of Plaintiff engaging in anal intercourse with her twelve-year-old son. Sievert called Marinette County Sheriff's Office Deputy Lance Lincoln, requesting his assistance in handling the report.

Once Lincoln arrived, the officers walked to an adjacent residence located at W8002 Minnie Street, Pembine, Wisconsin, where Antonelli lived with her son and Plaintiff. She reported Plaintiff owned the residence. She indicated that Plaintiff had invited her to live in the house, and she provided an access code to the officers to enter the residence. Although Plaintiff claims he did not give Antonelli permission to reside at the house and did not provide her with the means to access or enter the house, he admits that he allowed her to live with him and that she had a bed and clothing in a bedroom of the residence. The officers knocked on the doors of the residence to question Plaintiff about the video, but did not find anyone was home. Lincoln heard an all-terrain vehicle (ATV) near the property and walked to the front of the residence. Plaintiff drove the ATV to the residence. The officers placed Plaintiff under arrest based on the video that showed him sexually assaulting a minor.

Marinette County Sheriff's Office Patrol Deputy Steven Schmidt was dispatched to the location to provide assistance. By the time he arrived, Plaintiff was in custody. The officers initially placed Plaintiff in the back seat of Schmidt's squad car. Sievert left the premises but returned a short time later with his squad car. He contacted Marinette County Sheriff's Office Detective Todd Baldwin to discuss how to proceed with the investigation. Sievert then placed Plaintiff in the back of his squad car and transported him to the Marinette County Jail. After Sievert left the scene with Plaintiff, the officers advised Antonelli that, even though she had access to the house, the residence was considered a crime scene and she would not be able to stay there until it had been searched pursuant to a search warrant. Lincoln and Schmidt escorted Antonelli into the residence to allow her to retrieve some of her personal possessions while at the same time making sure she did not materially alter the scene. After Antonelli retrieved some of her belongings, the officers secured the residence. Neither Lincoln nor Schmidt searched the property or residence at that time. In the meantime, Sievert interviewed Plaintiff about the allegations at the Marinette County Jail.

On September 22, 2014, Marinette County Sheriff's Office Detective Todd Baldwin reviewed the evidence in the case and met with the Marinette County District Attorney to obtain a search warrant for the W8002 Minnie Street property. Marinette County Circuit Judge James Morrison found probable cause to believe evidence of a crime would be found in the house and issued a search warrant for the property that same day. ECF No. 49-1. After the warrant was issued, Baldwin, Marinette County Sheriff's Office Lieutenant Barry Degnitz, Marinette County Sheriff's Office Lieutenant Christopher Lesperance, Marinette County Detective Daniel Miller, and Marinette County Sheriff's Office Deputy Daniel Beauchamp traveled to the W8002 Minnie Street property to conduct the search. When they arrived, Lesperance photographed the exterior of the

3

buildings on the property, while the other officers knocked on the door of the residence. When no one responded, the officers used the code Antonelli had previously given them to obtain access to the residence. Once inside, the officers swept the residence to look for any individuals who might be inside. Although Plaintiff maintains Antonelli and her son were in the house before the officers arrived, the searching officers did not find anyone in the residence prior to the search. After the building was secured, Lesperance photographed the interior of the residence before the officers conducted the search. The officers then searched the property and seized various items of evidence. Once the officers completed the search, Lesperance photographed the premises. No property was damaged during the search. The officers then secured the property and left.

On September 23, 2014, Miller sought and obtained a second search warrant to review the content of two cell phones seized during the investigation. ECF No. 49-2. On September 24, 2014, after interviewing Antonelli's son, Baldwin sought an additional search warrant for the W8002 Minnie Street property. Judge Morrison issued another search warrant for additional items of evidence. ECF No. 49-3.

Degnitz and Lesperance traveled to the residence to retrieve the items pursuant to the search warrant on September 24, 2014. The officers were met by Antonelli, who had moved back into the house and was in the process of cleaning the residence. Antonelli provided access to the property, and the officers retrieved the items. The officers took photographs of the evidence seized during the search. Because Antonelli was in possession of the residence at Plaintiff's invitation, the officers left the property in her control.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In

4

deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Based on a review of his complaint, Plaintiff was allowed to proceed on a Fourth Amendment claim against Defendants. The Fourth Amendment protects the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff asserts Lincoln, Schmidt, and Sievert violated the Fourth Amendment by entering the home without a search warrant.

5

As an initial matter, Sievert contends that he is entitled to summary judgment because he did not enter or search Plaintiff's residence. "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Plaintiff has not established that Sievert was personally involved in any alleged constitutional deprivation. Accordingly, summary judgment as to Sievert is appropriate.

As to Plaintiff's claim against Lincoln and Schmidt, the Supreme Court has recognized "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). "The Supreme Court has stated that 'a fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable government invasions of legitimate privacy interests." *Bentz v. City of Kendallville*, 577 F.3d 776, 781 (7th Cir. 2009) (citation omitted). The rule prohibiting warrantless entry into a person's home "does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). "Common authority requires 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.'" *United States v. Brown*, 328 F.3d 352, 356 (7th Cir. 2003) (citation omitted). "When determining whether an individual has apparent authority to consent, the court employs an objective standard; officers may conduct a search without a warrant

6

if they 'reasonably (though erroneously) believe' that the person consenting had authority over the premises." *United States v. Richards*, 741 F.3d 843, 850 (7th Cir. 2014).

In this case, Antonelli had common authority to permit the officers to escort her into the residence so that she could gather some of her personal belongings. Antonelli told the officers that she lived in the house with her son and Plaintiff, that she had the access code to enter the property before Plaintiff's arrest, and that she had a bed and other possessions in the house. The officers reasonably concluded that Antonelli had the authority to consent to the officers' entry into the residence for the limited purpose of escorting her to retrieve her belongings. The officers did not conduct a search or seize any property in the residence at that time. Once Antonelli collected her belongings, the officers secured the residence after their exit. Given the limited purpose of their entry and the consent of Antonelli, the officers' conduct was lawful. Summary judgment in favor of Lincoln and Sievert will therefore be granted.

The searches conducted by the officers on September 22 and 24, 2014, pursuant to the warrants issued by Judge Morrison were likewise lawful. "Searches undertaken pursuant to valid search warrants are presumptively valid." *Archer v. Chisholm*, 870 F.3d 603, 614 (7th Cir. 2017) (citation omitted). In this case, the officers obtained search warrants from the Marinette County Circuit Court. The officers entered the residence using the access code Antonelli had given them, collected the items sought by the warrants, and left. The officers took photographs of the residence to show the state of the residence both before and after the searches.

A defendant can also violate the Fourth Amendment when he unnecessarily destroys property during the course of an otherwise valid search. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the course of a search may violate the

Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."); *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But Plaintiff does not assert that the officers stole or damaged his property during the search. Instead, he claims that Defendants forced him into giving Antonelli the access code to his house so she could enter it and steal his property. The undisputed evidence establishes, however, that Antonelli and her son lived with Plaintiff and had the access code prior to Plaintiff's arrest. In fact, Antonelli was the one that provided the defendants with the access code so they could enter the residence. The pictures the officers took show that the house was secure and there was no damage to the property. While the court must take the facts in the light most favorable to Plaintiff, his conclusory allegations that Antonelli did not have the access code to the house until the officers demanded that he give it to her are insufficient to establish a dispute of material fact to warrant the denial of Defendants' motion for summary judgment. The record before the court demonstrates that the officers' conduct during the search was reasonable. Accordingly, Defendants' motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 46) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  26th  day of October, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court